Curia, per

O’Neall, J.
This case was so much and so zealously pressed upon the Court, that it is, perhaps, necessary that it should receive a little more consideration than it would otherwise require. The different grounds will be, therefore, examined as particularly as possible.
1. The first ground imputes to the circuit court error in charging that the plaintiffs’s paper title covered the land in dispute. By this is to be understood that the plaintiffs’s deeds, commencing at that from Moses Sandridge to John Boyd, do not (as the defendant supposes) cover it; for, up to that link in the chain of title, the whole tract, as originally granted to Hall, was conveyed. It would be a sufficient answer to this ground to say, that this was the opinion of the Judge below on the facts of the case, and would *190 not necessarily constitute a ground of new trial. But I am not disposed thus to evade it. The deed from Moses Sandridge to John Boyd is dated the 25th of October, 1806. From that time to the trial, (thirty-six years,) he and those claiming under him have been in possession of the land lying east of Cane creek and north of the line found by the jury. During all that time they have claimed to that line. These facts, connected with even a doubtful description in the plaintiffs’s deeds, would have been enough to have justified the Judge in saying to the jury that he thought, on a fair construction, the plaintiffs’s deeds covered the land in dispute. Independent, however, of all aid outside of the description contained in the deeds themselves, it may be demonstrated that they cover the land.
The deeds from Cooper to Matthew Boyd, and from Matthew Boyd to the ancestor of the plaintiffs, describe the land conveyed thus: “ Beginning at an oak, and running to a black oak, original corner of Hall’s grant; from thence to a hickory on Cane creek, original corner; from thence, up the channel of said creek, to the original line of said grant; from thence to the beginning.” Cooper’s deed was executed in ’35, and Matthew Boyd’s in ’38. No one, looking at the plat, will have any difficulty about locating them. The beginning corner is the oak at F; thence to the red oak (which is often called a black oak) at A, the corner of both of Hall’s grants; thence to B, the hickory, also the corner of the same grants; thence up the creek to the original line at G; thence to F, the beginning corner. The lines thus traced include all the land claimed by the plaintiffs. Do the deeds from Sandridge to John Boyd, and from John Boyd to Cooper, cover the same land? The description given in them is: “ Beginning corner on a red oak; thence to a black oak on Prewett’s line; running on said line to a hickory corner on Cane creek; thence up said creek to said John Boyd’s line; thence on said Boyd’s line to the beginning.” Recur, again, to the plat; where is the red oak at which we are to begin 1 Aided by what we' clearly know, we have no difficulty in fixing on the red oak at F ; thence we are to reach a black oak on Prewett’s line. The red oak at A (indifferently called a black oak) was, at the execution of the deed, the corner of Prewett’s land, and the *191 head of the line A, B, which was Prewett’s line, as then understood. For Agnes Prewett was then the owner of the defendant’s land, and claimed that as her line. Putting these facts together, the line from F to A may be regarded as the line intended by the deed; thence on said line to a hickory on Cane creek; following Prewett’s line, we reach the hickory B; thence the deed directs us up Cane creek to John Boyd’s line, which is understood to be the exterior line of the Hall grant at G ; thence on said Boyd’s line to the beginning; that is, following the intervening lines to the corner at which we began, at F. Taking this view of the description, contained in the deeds from Moses Sandridge to John Boyd, and from John Boyd to Nathan Cooper, there cannot be a doubt about the plaintiffs’s paper title covering the land in dispute.
2. The second ground relates to the admission of the will of Nathan Sandridge in evidence. His will was found in the proper office, (the Ordinary’s,) in which it had been recorded twenty-three years before the trial. It had been irregularly proved before Esq. Salter in 1804, soon after the testator’s death; so that the will was, in fact, thirty-eight years old; under it thirty-six years’ possession was proved. This was surely enough, and more than enough, to admit any deed or will as an ancient paper. In Robinson and wife vs. Craig, 1 Hill, 389, it was held that six or eight years’ possession under a deed more than thirty years old, which had been recorded soon after it was executed, was enough to admit it in evidence. In Duncan vs. Beard, 2 N. and McC., 406, one of the grounds raised the question as to- the admissibility of Salvadore’s will as an ancient paper. The will then was thirty-seven years old. Judge Colcock stated the rule, (as I think it always was and ought to be,) “ that a deed of thirty years may be given in evidence, without proof of its execution, if accompanied by possession, and a mere entry for the purpose of re-survey has been considered a sufficient possession.” If it had been clear that there had been possession under the will, in that case no other proof would have been required. For there is, in the application of this rule, no difference between a deed and a will. Apply those authorities to the facts, that the will here was thirty-eight years old, that *192 it was found in the proper office, and that thirty-six years’ possession had been held under it, and it would task the ingenuity of learning to find a reason why it should not he received in evidence.
3. I shall next consider the 5th ground. It supposes that there was error in rejecting the evidence offered to prove the agreement between Cooper and the defendant, about the disputed line between them. Whatever that agreement was, it was reduced to writing; and unless the written memorandum of the agreement, signed by the parties, was produced, nothing can be said about it. Indeed, after we are informed it was in writing, it is the same, in the absence of the writing, as if no proof had been given. For the rule, that the best evidence which the nature of the cáse will admit of shall be given, excludes every thing until the writing is produced, shown to be destroyed, or that it is in the possession of the adverse party, who refuses, under a proper notice, to produce it. It is true, where an instrument comes collaterally in question, evidence may be given of it without producing it. But the agreement here, if any existed, was a part of the defendant’s title to the land, and must, therefore, be produced or accounted for, before secondary evidence can be received.
4. The defendant’s 4th ground only requires that I should refer to the case of Izard vs. Montgomery, 1 N. and McC., 381, for an authority to support the instruction given to the jury in this respect.
5. The defendant’s 3d, 6th, and 7th grounds present the same question — were the jury properly instructed onfthe rules of location, and did they correctly-locate the respective grants of the defendant and the plaintiff 1 Both grants are to James Hall; the defendant’s is the eldest. The difference between the surveys on which they were taken out is only three days; they were run by different surveyors. In the defendant’s grant, the line from the hickory corner to the red oak, the line B, A, was only run a short distance, perhaps a chain or two, one tree marked, and the balance of the line left open. The plaintiffs’s survey was run, beginning at the hickory, and thence down the creek to a comer H, thence to I, thence to K, thence to L, thence by various lines to F, and thence to A ; the red oak corner *193 of the Hall grant, thence to the hickory B, was left an open line, the surveyor calling for the former survey as a boundary. These facts, which plainly appear from the plats annexed to the grants, are stated for the better understanding of the application of the rules of location to the case in hand.
The defendant’s counsel argued, that the Court erred in saying to the jury, that in locating the defendant’s grant, if course and distance, unaided by other circumstances, were resorted to, it could never even reach the hickory corner B, on the line C, B. That position, thus assailed, is, I still think, correct. The defendant’s plat, as that belonging to the oldest grant, is to be first correctly located, before the plaintiffs can claim any thing.
Beginning at A, the lines to D, thence to C, thence to the hickory station M, are established by the marked trees. At this point they fail, and the surveyor, to locate the balance of that line, and fix the corner, if he has nothing else to help him, must resort to course and distance. There is no dispute about the course. The distance from the corner C will hardly carry him beyond the hickory station M, but as that is marked and laid down on the original plat, he may ascertain the plat distance from it, and give that much to the line; still he will not reach B. He cannot assume, because the parallel line is proved by marked trees to be longer than that laid down in the plat, that this line is also that much longer; for the mistake of the surveyor or chain-carriers on one line need not necessarily occur on its parallel. The object of rules of location is to enable us to find where the surveyor went, and, when this can be ascertained, every thing is accomplished. To decide where the line, commencing at C, and running N. W. should end, it is necessary to ascertain where is the corner. The plat calls for a hickory east of Cane creek. The hickory at B is east of Cane creek; is beyond the distance called for in the defendant’s plat; was pointed out by Agnes Prewett, the then owner, in 1815, as the corner; it was marked for both surveys, and corresponded in age with them, when it was blocked, and the growths counted from the marks. The jury were told, according to .well-settled principles, that if that corner was established to *194 their satisfaction, it fixed the terminus of that line at B, and then the line from B to A must be closed, without regard to the course or shape of the plat. This, it seems to me, is in conformity with Coates vs. Matthews, 2 N. and McC., 99; Colclough vs. Richardson, 1 McC., 167; Welch vs. Phillip, Id., 215; Walsh vs. Holmes, 1 Hill, 12. The jury established that corner, and it followed that the defendant’s survey did not cover the land in dispute, and that the plaintiffs’s grant, by closing on the same line, did. The verdict is, therefore, right, both in law and fact. The motion is dismissed.
Richardson, Evans, Earle, and Butler, JX, concurred.
Wardlaw, X,
assented, except under the first ground, to the sufficiency of the description in the deed from Moses Sandridge to John Boyd, which he doubts cannot be made to cover the particular parcel, without a violation of the statute of frauds.